ROBERT S. GIANELLI, #82116
JOSHUA S. DAVIS, #193187
ADRIAN J. BARRIO, #219266
GIANELLI & MORRIS, A Law Corporation
550 South Hope Street, Suite 1645
Los Angeles, CA 90071
Tel: (213) 489-1600; Fax: (213) 489-1611
rob.gianelli@gmlawyers.com
joshua.davis@gmlawyers.com
adrian.barrio@gmlawyers.com

Attorneys for Plaintiff
BANAFSHEH AKHLAGHI,
on behalf of herself and all others
similarly situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND

| | |
|---|---|
| BANAFSHEH AKHLAGHI, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CIGNA HEALTH AND LIFE INSURANCE COMPANY, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No.: 4:19-cv-3754- JST (JCSx) <br> Assigned to Hon. Jon S. Tigar, CR6 <br><br> **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT** <br><br> Date: February 3, 2022 <br> Time: 2:00 p.m. <br> Place: Courtroom 6 |

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 3, 2022 at 2:00 p.m. in Courtroom 6 of the above-entitled court, located at 1301 Clay Street, Oakland, CA 94612, Plaintiff Banafsheh Akhlaghi will move the Court for an Order:

1.     Certifying the Class for settlement purposes, appointing Plaintiff Banafsheh Akhlaghi as class representative, and appointing Gianelli & Morris as class counsel ("Class Counsel");

2.     Preliminarily approving the proposed settlement, attached as Exhibit 1 to the Declaration of Robert S. Gianelli, submitted herewith;

3.     Approving issuance of notice to the Class; and

4.     Setting a hearing for final approval of the settlement and the motion by Plaintiff and Class Counsel for an award of attorneys' fees and expenses and an incentive award for the class representative Banafsheh Akhlaghi.

This motion is based on this notice, the attached memorandum of points and authorities, the Declaration of Robert S. Gianelli and the attached settlement agreement and exhibits thereto, the Declaration of Dung Nguyen, M.D., the Court's files and records in this action, and upon such other evidence and argument as may be presented at the hearing.

DATED: November 30, 2021              GIANELLI & MORRIS


                                      By:   /s/ Joshua S, Davis
                                         ROBERT S. GIANELLI
                                         JOSHUA S. DAVIS
                                         ADRIAN J. BARRIO
                                         Attorneys for Plaintiff
                                         BANAFSHEH AKHLAGHI

1

# TABLE OF CONTENTS

*Page*

MEMORANDUM OF POINTS AND AUTHORITIES…………………………...1

I.      INTRODUCTION……………………………………………………………...1

II.     SUMMARY OF THE LITIGATION……………………………………….2

    A.     Relevant procedural history……………………………………………...2

    B.     Investigation and extent of discovery completed……………………..4

    C.     Negotiation of the Settlement……………………………………………...5

III.    THE PROPOSED SETTLEMENT…………………………………………5

    A.     Relief for class members………………………………………………...5

    B.     Released claims……………………………………………………………8

    C.     Notice……………………………………………………………………8

    D.     Attorney fees……………………………………………………………8

IV.     ARGUMENT…………………………………………………………………9

    A.     The proposed class meets the requirements of Rule 23………………9

        1.     Rule 23(a) requirements………………………………………...10

            a.     Numerosity………………………………………………10

            b.     Commonality……………………………………………11

            c.     Typicality…………………………………………….....11

            d.     Adequacy……………………………………………12

        2.     Rule 23(b)……………………………………………………13

            a.     Rule 23(b)(1)……………………………………………..13

            b.     Rule 23(b)(2)……………………………………………14

            c.     Ascertainability…………………………………………14

    B.     The proposed settlement warrants preliminary approval……………15

        1.     The Settlement is the product of good faith, informed,
            arm's-length negotiations between experienced counsel…….17

2.    The Settlement obtains the relief sought by the class demonstrating beyond question that the Settlement is within the range of reasonableness………………………...17

3.    No preferential treatment for the class representative………..20

4.    The views of experienced counsel……………………………20

V.    PROPOSED SCHEDULE…………………………………………………21

VI.    CONCLUSION……………………………………………………………22

# TABLE OF AUTHORITIES

*Page(s)*

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001)………………………………………………12

*Baby Neal for and by Kanter v. Casey*,
43 F.3d 48 (3d Cir. 1994)………………………………………………..14

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017)………………………………………...15

*Bublitz v. E.I. Du Pont de Nemours and Co.*,
202 F.R.D. 251 (S.D. Iowa 2001)………………………………….....10

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020)………………………………………..18

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992)………………………………………...15

*Des Roches v. California Physicians' Service*,
320 F.R.D. 486 (N.D. Cal. 2017)………………………………………..19

*Escalante v. California Physicians Service dba Cigna of California*,
309 F.R.D. 612 (C.D. Cal. 2015)………………………………...10 - 15

*Gen. Tel. Co. of Southwest v. Falcon*,
457 U.S. 147 13 (1982)………………………………………………12

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)………………………………………16,18,19

*Horn v. Wholesale Grocers, Inc.*,
555 F.2d 270 (10th Cir. 1977)………………………………...…10

*In re Tableware Antitrust* Litig.,
484 F.Supp.2d 1078 (N.D.Cal.2007)………………………………………16

*Jackson v. Danberg*,
240 F.R.D. 145 (D. Del. 2007)……………………………………………10

*Johnson v. California*,
  543 U.S. 499 (2005)……………………………………………………..12

*Martial v. Coronet Ins. Co.*,
  880 F.2d 954 (7th Cir. 1989)………………………………………….10

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012)………………………………………….11

*McMillon v. State of Hawaii*,
  261 F.R.D. 536 (D. Haw. 2009)……………………………………….10

*Moeller v. Taco Bell Corporation*,
  220 F.R.D. 604 (N.D. Cal. 2004)……………………………………..10

*Officers for Justice v. Civil Serv. Comm'n.*,
  688 F.2d 615 (9th Cir. 1982)…………………………………....2,16

*Otey v. CrowdFlower, Inc.*,
  2014 WL 1477630 (N.D. Cal. 2014)………………………………….16

*Parra v. Bashas', Inc.*,
  536 F.3d 975 (9th Cir. 2008)………………………………………….11

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014)…………………………………....11,14

*Protective Comm. For Indep. Stockholders of TMT
Trailer Ferry, Inc. v. Anderson*,
  390 U.S. 414 (1968)…………………………………………………..18

*Saffle v. Sierra Pacific Power Co. Bargaining Unit Long
Term Disability Income Plan*,
  85 F.3d 455 (9th Cir. 1996)…………………………………………...19

*Shelton v. Bledsoe*,
  775 F.3d 554 (3d Cir. 2015)…………………………………………..14

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003)………………………………………….12

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338, 361 (2011)……………………………………....9

*Weinberger v. Thornton*,
    114 F.R.D. 599 (S.D. Cal. 1986)…………………………………...11

*Weiss v. New York Hospital*,
    745 F.2d 786 (3d Cir. 1984)…………………………………………..10

*Wit v. United Behavioral Health*,
    317 F.R.D. 106 (N.D. Cal. 2016)…………………………………..19

*Z.D. ex rel. J.D. v. Group Health Cooperative*,
    2012 WL 1977962  (W.D. Wash. June 1, 2012)…………………………...14

*Zinser v. Accufix Research Institute, Inc.*,
    253 F.3d 1180 (9th Cir. 2001)………………………………………...12

**Statutes**

**Federal Rule of Civil Procedure**

        Rule 23………………………………………………..*Passim*
        Rule 30…………………………………………………………4

**Code of Federal Regulations**

        Title 29 § 2560.503-1……………………………………………13

**United State Code**

        Title 29 § 1132…………………………………………………2

**Treatise**

*Manual for Complex Litigation* (4th ed. 2004)………………………………2,15,16
*Newberg on Class Actions* (5th ed. 2016)………………………………………2,16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case concerns the practice of Defendant Cigna Health and Life Insurance Company ("Cigna") to categorically deny coverage for liposuction to treat lipedema on the grounds it is "experimental, investigational or unproven." Plaintiff Banafsheh Akhlaghi ("Plaintiff" or "Akhlaghi") and Cigna (collectively the "Parties") have agreed to settle this case on the terms set forth in the Settlement Agreement ("the Settlement") attached as Exhibit 1 to the Declaration of Robert S. Gianelli ("Gianelli Decl."), filed herewith.

The Settlement followed major policy changes from Cigna directly resulting from this litigation. About two years after this action was filed, Cigna changed its "experimental, investigational or unproven" coverage position with respect to liposuction to treat lipedema to provide that such treatment is medically necessary and covered if certain criteria are met.

Cigna's post-litigation reversal of its coverage position is built into the Settlement. Cigna has agreed not to change its revised position on the status of liposuction to treat lipedema unless such change is warranted by a change in the medical literature and medical community's views.

In addition, Cigna will: 1) allow Cigna members whose requests for liposuction to treat lipedema were previously denied to have those requests re-reviewed under its new coverage guideline known as a "Medical Coverage Policy"; and 2) review future requests for liposuction to treat lipedema under its New Coverage Policy.

Akhlaghi respectfully requests the Court to preliminarily approve the Settlement, which provides substantially all of the relief requested in the operative Second Amended Complaint ("SAC"). At the preliminary approval stage, the Court makes only a preliminary determination of the Settlement's fairness, reasonableness, and adequacy so that notice of the Settlement may be given to the Class and a

fairness hearing may be scheduled to make a final determination about the Settlement's fairness. *Newberg on Class Actions*, § 13:12 (5th ed. 2016); *Manual for Complex Litigation* (4th ed. 2004) § 21.632. In so doing, the Court simply reviews the Settlement to determine that it is not collusive and, taken as a whole, is fair, reasonable, and adequate to all concerned. *Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982).

The Settlement easily meets this standard. It is the product of extensive, arm's-length negotiations between the Parties, and will fairly resolve this case. Indeed, the Settlement achieves substantially all of the relief sought in the SAC so a victory at trial for the Class would provide no additional benefit.

Plaintiff therefore respectfully requests that the Court certify the settlement Class, appoint Akhlaghi as its class representative, appoint Gianelli & Morris as Class Counsel, preliminarily approve the Settlement, approve issuance of notice to the Class; and set a hearing for final approval of the Settlement and the motion by Plaintiff and Class Counsel for an award of attorney fees and expenses, and an incentive award for the class representative.

## II.   SUMMARY OF THE LITIGATION

### A.   Relevant procedural history.

On June 27, 2019, Akhlaghi filed this ERISA class action case against Defendants Cigna Corp. and Cigna Health and Life Insurance Company seeking declaratory and injunctive relief on behalf of the class pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3) and an individual claim for benefits under 29 U.S.C. § 1132(a)(1)(B). (Dkt. 1.)  Plaintiff filed a First Amended Complaint on November 18, 2019. (Dkt. 42.)

On December 18, 2019, Defendants filed a Rule 12(b)(6) motion to dismiss. (Dkt. 45.) On July 27, 2020, the Court denied Defendants' motion to dismiss. (Dkt. 64.)

After the parties conducted extensive discovery and Plaintiff took depositions

1   (discussed *infra* at section II.B), on March 19, 2021, the Parties filed a joint
2   stipulation for leave to file a Second Amended Complaint (SAC) and dismissal of
3   Cigna Corp. (Dkt. 82.) On March 23, 2021, the Court entered an Order dismissing
4   Cigna Corp. without prejudice and granting leave to file the SAC. On March 25,
5   2021, Plaintiff filed the operative Second Amended Complaint ("SAC"), which
6   revised the proposed class definition and added additional facts that Plaintiff learned
7   during discovery. (Dkt. 84.)

8       In the SAC, Plaintiff alleges that Cigna categorically denies all requests for
9   specialized liposuction to treat lipedema ("Lipedema Surgery") on the basis that the
10  procedure is "experimental, investigational or unproven." Plaintiff alleges that since
11  August 15, 2018, Cigna denied all such requests pursuant to an extra-contractual
12  internal guideline, Medical Coverage Policy (MCP) 0531, "Surgical Treatments for
13  Lymphedema and Lipedema." (SAC at ¶¶ 16-19.) Prior to publication of MCP 0531,
14  Plaintiff alleges that Cigna denied all claims for Lipedema Surgery as "experimental,
15  investigational or unproven" pursuant to its internal medical inquiry database. (*Id*.)
16  Cigna denied Akhlaghi's request for Lipedema Surgery on this basis (*Id*., ¶¶ 21-30.)

17      However, contrary to Cigna's position, Lipedema Surgery is not
18  "experimental, investigational or unproven." (SAC, ¶ 20.) It is the only available
19  therapy for this condition and has been the subject of various studies that show its
20  beneficial effect. (*Id*.) It is routinely performed at Stanford University Medical
21  Center and other leading medical facilities. (*Id*.)

22      The primary relief requested by Plaintiff is an injunction requiring Cigna to
23  retract its erroneous coverage position that Lipedema Surgery is experimental,
24  investigational or unproven, adjudicate future claims under appropriate and valid
25  criteria, provide notice to members who have had requests for Lipedema Surgery
26  denied, to re-review the denied claims under the proper standard, and make payment
27  where appropriate. (*Id*. at ¶ 60.)

28

On April 27, 2021, the Parties filed a Joint Stipulation to extend all deadlines 120 days because the Parties had commenced settlement negotiations, which the Court granted. (Dkt. 86 and 87.) The Parties subsequently engaged in intense settlement negotiations over the next six months, and the Court granted several additional extensions to assist in the negotiations.  (Dkt. 89, 90, 91, 92.)

Effective June 15, 2021, Cigna revised MCP 0531, to remove its coverage statement that Lipedema Surgery was "experimental, investigation or unproven," and to state that Lipedema Surgery was considered medically necessary when certain criteria are met. Following further settlement negotiations, the criteria in MCP 0531 were further revised effective October 20, 2021 (the "New Coverage Policy").

The Parties executed the Settlement Agreement on November 22, 2021. (Ex. 1.)

**B.    Investigation and extent of discovery completed.**

The Parties' settlement occurred over two years after this action was filed and was well informed by the discovery and investigation completed up to that point. (Gianelli Decl., ¶ 24.) At the time of settlement, Cigna had produced over 33,000 pages of information concerning the class and merits issues. (*Id*.) For her part, Plaintiff produced nearly 500 pages of information supportive of her position that Cigna's policies and practices are amenable to class treatment and that Lipedema Surgery is safe and effective. (*Id*.)

Plaintiff served and Cigna responded to requests for production of documents, numerous interrogatories and requests for admissions. (Gianelli Dec*., ¶* 25.) Cigna also served and Plaintiff responded to interrogatories, requests for production and two sets of requests for admission. (*Id*.) In addition, Plaintiff deposed five Cigna employees and doctors, including FRCP 30(b)(6) witnesses on 20 class and merit topics. (*Id*.)

Like every other aspect of this case, discovery was hard fought and contested. (Gianelli Dec., ¶ 26.) Several discovery disputes arose that required Court assistance, particularly in regard to discovery of Cigna's practices prior to the adoption of MCP

0531. On April 10, 2020, the Parties filed a joint letter brief, resulting in a referral to Magistrate Judge Joseph Spero, who held a discovery conference on May 1, 2020. (Dkt. 54 and 55.) Following the submission of two additional letter briefs, Judge Spero granted Plaintiff's motion to compel the requested discovery. (Dkt. 61, 62 and 63.)

Class Counsel supplemented formal discovery with its own investigation and research. (Gianelli Dec., ¶ 27.) Class Counsel engaged in extensive investigation and research regarding the safety and effectiveness of Lipedema Surgery and retained and extensively worked with renowned experts on lipedema, reconstructive surgery, and the body of medical literature addressing it. (*Id*.) As part of the settlement negotiations, the parties also exchanged information concerning the efficacy of liposuction to treat lipedema. (*Id*.)

### C.   Negotiation of the Settlement.

The parties' attempts to settle this case began only after extensive discovery and motion practice had occurred in April 2021, and entailed the robust exchange of information (including expert information). (Gianelli Decl*.,* ¶ 28.) The parties engaged in extensive and vigorous settlement negotiations over the next six months until they reached a settlement on November 22, 2021. (*Id*.)

The informed view of experienced class counsel is that the proposed settlement is fair, reasonable, and adequate and easily meets the criteria for preliminary approval. (Gianelli Decl., ¶ 29.) The Settlement achieves substantially all of the relief requested in the SAC, and trial would afford no further benefit. (*Id*.)

## III.   THE PROPOSED SETTLEMENT

### A.   Relief for class members.

The proposed settlement provides the following relief. First, pursuant to its New Coverage Policy effective October 20, 2021, Cigna has removed its previous coverage position that Lipedema Surgery is "experimental, investigational or unproven." Cigna has agreed it will now cover Lipedema Surgery when certain

medical criteria are satisfied. (Ex. 1 at ¶ 10.) The criteria are used to confirm a diagnosis of symptomatic lipedema for which Lipedema Surgery is medically necessary. The New Coverage Policy provides, in pertinent part, that Lipedema Surgery is medically necessary when the following criteria are met:

- pain in the affected areas
- easy bruising
- nodularity of fat deposits in lipedema affected areas (dimpled or orange peel texture)
- tenderness
- physical function impairment (i.e. difficulty ambulating or performing activities of daily living)
- absence of pitting edema (no "pitting" when finger or thumb pressure is applied to the area of fat) unless the individual has coexisting lymphedema
- negative Stemmer sign, unless the individual has coexisting lymphedema (Stemmer sign is negative when a fold of skin can be pinched and lifted up at the base of the second toe or at the base of the middle finger)
- lack of improvement in lipedema-affected areas following weight loss if applicable
- lack of improvement in swelling with limb elevation
- lack of response to at least three consecutive months of medical management (e.g. conservative treatment with compression garments and manual lymph drainage)
- photographs confirm the presence of bilateral symmetric adiposity (fat accumulation) in the affected extremities.

Class Counsel vetted the medical criteria in the New Coverage Policy with Dung Nguyen, M.D., a nationally-renowned reconstructive surgeon affiliated with the Lymphedema Center at Stanford Health Care, which has developed a program to treat lipedema patients at Stanford. Dr. Nguyen specializes in surgical treatment of both lipedema and lymphedema. As set forth in her concurrently filed declaration, Mr. Nguyen's opinion is that the above medical necessity criteria accurately list the symptoms that medical doctors observe in patients with lipedema, and thus are very reasonable and appropriate for criteria to be met prior to using liposuction to treat a lipedema patient. (Nguyen Decl., ¶ 14.)

1   Cigna has agreed not to change its position unless such change is warranted

2   by a change in the medical literature and medical community's views. (Ex. 1 at ¶

3   10.) A copy of the New Coverage Policy is attached as Exhibit D to the Settlement.

4   All class members who have paid out-of-pocket for Lipedema Surgery can

5   make claims for reimbursement to the extent those out-of-pocket payments have not

6   been paid by other insurance, Medicare, or other reimbursement sources for which

7   the class member owes no reimbursement obligation. (Ex. 1. at ¶ 11.) If Cigna

8   determines that the claim for reimbursement satisfies the criteria for the surgery under

9   its New Coverage Policy, Cigna will reimburse the Class Member for the out-of-

10  pocket expenses, subject to a reduction only for the cost-share the Class Member

11  would have paid under the Class Member's contract with Cigna had that claim been

12  initially approved as an in-network service. (*Id.*) If any criteria cannot be verified due

13  to passage of time, a good faith decision will be made regarding such criteria based

14  upon the available evidence. (*Id.*)

15  For class members who have not yet undergone Lipedema Surgery, and are

16  currently covered by Cigna, they can request re-review by submitting a new request

17  for approval for the surgery pursuant to the terms of their existing Cigna contracts

18  and the New Coverage Policy. (Ex. 1. at ¶ 12.)

19  Class Members who are not covered under Cigna as of October 20, 2021, and

20  have not paid unreimbursed amounts for Lipedema Surgery, are ineligible for re-

21  review, but they release no claims and are free to make claim with any health plan

22  they now have or will have in the future. (*Id.*). The statute of limitations applicable to

23  their claim denials is also tolled from the date of the filing of this action until the

24  Effective Date of the Settlement. (Ex. 1, ¶ 8(s).)

25  If Cigna denies a claim for reimbursement or reprocessing under the New

26  Coverage Policy, the Class Members can dispute the reimbursement decision through

27  the appeal or review process provided in the Members' plan, including a lawsuit.

28  Class Members with reimbursement disputes will also be required to provide notice

1  of the dispute to the Settlement Administrator. (Ex. 1 at ¶¶ 11 and 12.) Upon request,

2  Cigna will provide Class Counsel with a summary of all reimbursement and

3  reprocessing decisions, and Class Counsel will have a right to sample those decisions.

4  Ex. 1 at ¶ 13.)

5  **B.   Released claims.**

6  The Settlement's release of claims provision bars the assertion, by any Class

7  Member, of any and all claims against Cigna arising out of: (1) any denial of

8  Lipedema Surgery under ERISA-governed plans, either fully insured or self-insured,

9  issued or administered by Cigna, including as a *de-facto* administrator, that occurred

10 at any time from June 27, 2015, through October 20, 2021, denied under the Former

11 Medical Policy and/or denied as "experimental, investigational or unproven," and/or

12 (2) the appropriateness of the criteria in the New Coverage Policy. (Ex. 1 at ¶8(s).)

13 Released Claims do not include any claims for reimbursement or re-review

14 submitted pursuant to the Settlement, that are denied after Final Approval. Released

15 Claims also do not include any claim by a Class Member who has not paid

16 unreimbursed amounts to undergo Lipedema Surgery who is not covered by Cigna as

17 of October 20, 2021. (*Id*.)

18 **C.   Notice.**

19 The Parties agree that no later than thirty five (35) days after entry of the

20 Preliminary Approval Order, a Settlement Administrator will mail notice of the

21 proposed settlement to all class members as identified from Cigna's data search. (Ex.

22 1 at ¶ 20.)

23 **D.   Attorney fees.**

24 If the Court preliminarily approves the Settlement, Class Counsel will move

25 for an award of attorney fees and costs. Cigna has agreed not to oppose any

26 application by Class Counsel for fees and costs in an amount up to $542,382 in

27 attorney fees and $29,986 in costs, subject to Court approval. (Ex. 1 at ¶¶ 16-17.)

28

1  Akhlaghi will also apply for an incentive award in the amount of $15,000 for her

2  work as class representative in this case. (*Id*. at ¶ 19.)

3  **IV.   ARGUMENT**

4      **A.   The proposed class meets the requirements of Rule 23.**

5      Akhlaghi seeks certification of the following settlement class:

6      All persons covered under ERISA health plans, self-funded or fully
7      insured, that are administered by Cigna and whose claims for
    specialized liposuction for treatment of their lipedema were denied as
8      "experimental, investigational or unproven."

9      To maintain a class action under Rule 23, the requirements of Rule 23(a) must

10  first be established. Under Rule 23(a), a class may be certified if: (1) the class is so

11  numerous that joinder of all members is impracticable; (2) there are questions of law

12  or fact common to the class; (3) the claims or defenses of the representative parties

13  are typical of the claims or defenses of the class; and (4) the representative parties

14  will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). In

15  addition to the Rule 23(a) requirements, at least one of the three subsections of Rule

16  23(b) must be met.

17      Here, Akhlaghi is seeking to certify the proposed class for settlement purposes

18  under Rule 23(b)(1) and Rule 23(b)(2).[1]

---

22  [1] Certification is not being sought under Rule 23(b)(3) because no class member is
23  "*entitled* to an individualized award of monetary damages" under the terms of the
proposed settlement agreement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361
24  (2011). Instead, Cigna will reimburse the class member for the out-of-pocket
25  expenses *if* Cigna determines that the claim for reimbursement satisfies the criteria
for the surgery under its current guideline. Thus, any monetary relief obtained by the
26  class members is entirely conditional and incidental to the primary relief of claim
27  reprocessing, *See* discussion of reprocessing remedy under ERISA at section IV.B.2,
28  *infra*.

1          **1.      Rule 23(a) requirements.**

2                  **a.      Numerosity.**

3          Rule 23(a)(1) requires that a class be so numerous that joinder of all members

4   is impracticable. *Moeller v. Taco Bell Corporation*, 220 F.R.D. 604, 608 (N.D. Cal.

5   2004). Plaintiff is not required to identify each and every potential member of the

6   class or specify the exact number of potential class members. *Martial v. Coronet Ins.*

7   *Co.*, 880 F.2d 954, 957 (7th Cir. 1989). Instead, plaintiff need only provide a

8   properly supported estimate. *Id.*

9          Following a diligent search of its data systems, Cigna reports that there are at

10  least 26 persons Class Members. Cigna also reports that there are another 213

11  members that potentially satisfy the class definition. (Gianelli Decl., ¶ 22)[2] This

12  estimate easily meets the numerosity threshold for an injunctive relief class.

13  *Escalante v. California Physicians' Service*, 309 F.R.D. 612, 618 (C.D. Cal. 2015)

14  (numerosity satisfied "even presuming a class of 19" due to the nature of relief

15  sought). *See also Weiss v. New York Hospital*, 745 F.2d 786, 808 (3d Cir. 1984);

16  *Horn v. Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977); *McMillon v.*

17  *State of Hawaii,* 261 F.R.D. 536, 543 (D. Haw. 2009) (finding the numerosity

18  requirement satisfied where the putative class consisted of 10 identifiable members,

19  as well as future, unidentified members); *Jackson v. Danberg*, 240 F.R.D. 145, 147

20  (D. Del. 2007) (16 members enough); *Bublitz v. E.I. Du Pont de Nemours and Co.*,

21  202 F.R.D. 251, 256 (S.D. Iowa 2001) (17 members enough).

22

23  ───────────────

24  [2] When submitting claims and preauthorization requests, providers identify the

25  medical procedure using a Current Procedure Terminology (CPT) code and the
    primary diagnosis by an International Classification Disease (ICD-10) code. During

26  the relevant time period, there has been no standard ICD-10 code designated for
    lipedema, making it difficult to identify all persons whose liposuction requests were

27  for the treatment of lipedema. (Gianelli Decl., ¶ 22.) For this reason, the Parties
    intend to provide notice to all members who could potentially satisfy the class

28  definition to ensure all Class Members receive relief.

### b.   Commonality.

Rule 23(a)(2) requires that there be questions of law or fact that are common to the class. Rule 23 does not require that all questions of law and fact be common to all class members. *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008). In fact, only one question of law or fact must be common to the proposed class. *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).

Here, the propriety of Cigna's denial of Lipedema Surgery during the relevant time period is unquestionably a common issue. In *Escalante v. California Physicians Service dba Cigna of California*, 309 F.R.D. 612 (C.D. Cal. 2015), the court addressed a health plan's refusal to cover an analogous surgical procedure, lumbar ADR, as experimental, and held that the commonality requirement was satisfied. The *Escalante* court's language and reasoning is fully applicable here:

> The Court concludes that there are common questions that have common answers relevant to the resolution of this case. In particular, Plaintiff's first question would result in an answer that goes to the heart of the resolution of Plaintiff's claims. Plaintiff is challenging Defendant's uniform policy of categorically denying coverage for lumbar ADR procedures.

*Id*. at 618.

Because Akhlaghi is challenging Cigna's categorical denial of Lipedema Surgery during the relevant time period as "experimental, investigational or unproven," there is a common question that has a common answer. Thus, the commonality element is satisfied.

### c.   Typicality.

Rule 23(a)(4) requires that the claims of the named plaintiff be typical of those of the class. The purpose of the typicality requirement is to "assure[ ] that the interest of the named representatives align with those of the class." *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986). Where, as here, "the challenged conduct is a policy or practice that affects all class members," the Ninth Circuit does "not insist

1  that the named plaintiffs' injuries be identical with those of the other class members,

2  only that the unnamed class members have injuries similar to those of the named

3  plaintiffs and that the injuries result from the same injurious course of conduct."

4  *Armstrong v. Davis*, 275 F.3d 849, 868-869 (9th Cir. 2001)*, abrogated on other*

5  *grounds by Johnson v. California*, 543 U.S. 499, 504-505 (2005).

6         In this case, "the injuries [of the class members] are identical." *Armstrong*,

7  *supra*, 275 F.3d at 869. Akhlaghi and all the proposed class members have suffered

8  "the same or similar injury": they have been denied Lipedema Surgery to treat their

9  lipedema. *Escalante*, *supra*, 309 F.R.D. at 619. This common injury springs from the

10  same "uniform course of conduct," namely, Cigna's categorical exclusion of

11  Lipedema Surgery from coverage. The typicality requirement is therefore satisfied.

12                         **d.     Adequacy.**

13         Rule 23(a)(4) requires that the representative parties will fairly and adequately

14  protect the interests of the class. This prerequisite is primarily concerned with "the

15  competency of class counsel and conflicts of interest." *Escalante*, *supra*, 309 F.R.D.

16  at 619 (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n. 13

17  (1982). Resolution of two questions determines whether this requirement is met: (1)

18  does the named plaintiff and their counsel have any conflicts of interest with other

19  class members, and (2) will the named plaintiff and their counsel prosecute the action

20  vigorously on behalf of the class? *Escalante*, *supra*, 309 F.R.D. at 619. *See also*

21  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

22         As set forth above, Akhlaghi's interests are co-extensive and do not conflict

23  with the proposed class members' interests, and are typical of the claims of the other

24  class members. Akhlaghi has an interest in vigorously prosecuting this case on behalf

25  of the proposed class because she seeks benefits for Lipedema Surgery. This

26  explicitly advances the interests of the Class.

27         Likewise, Class Counsel will vigorously prosecute this action on behalf of the

28  class. Class Counsel has significant experience in insurance litigation and class

litigation. (Gianelli Decl. at ¶¶ 2-4.) Gianelli & Morris has successfully prosecuted numerous insurance class actions and, in particular, health insurance class actions alleging violations of statutory and/or contractual law. (*Id.*)

### 2. Rule 23(b).

The next determination is whether this case fits one of the three subsections of Rule 23(b). The two subsections at issue are subsections (b)(1) and (b)(2).

### a. Rule 23(b)(1).

Rule 23(b)(1) is divided into two subsections, Rule 23(b)(1)(A) and 23(b)(1)(B). Certification is proper herein under both subsections.

A class action is maintainable under Rule 23(b)(1)(A) if "prosecution of separate actions … would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." As explained in *Escalante*, "[t]his subsection covers actions where the party is obliged by law to treat the members of the class alike or where the party must treat all alike as a matter of practical necessity." *Escalante*, *supra*, 309 F.R.D. at 619-620 (internal quotations omitted). *See also Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001) (the phrase "incompatible standards of conduct" refers to the situation where "different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct").

Certification is also proper pursuant to Rule 23(b)(1)(B), which requires a showing that "adjudications with respect to individual class members … would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed.R.Civ.P. 23(b)(1)(B). ERISA requires that, where appropriate, plan provisions must be "applied consistently with respect to similarly situated claimants." 29 C.F.R. § 2560.503-1(b)(5). If this Court were to find that the terms of Cigna's EOCs required Cigna "to act in a certain fashion, ERISA would require

[Cigna] to act in a similar fashion toward all beneficiaries—the quintessential (b)(1)(B) scenario." *Z.D. ex rel. J.D. v. Group Health Cooperative*, 2012 WL 1977962 at *7 (W.D. Wash. June 1, 2012).

### b. Rule 23(b)(2).

A class is proper under Rule 23(b)(2) if the party opposing the class has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole …" Fed.R.Civ. P. 23(b)(2). The key to certification under Rule 23(b)(2) is establishing uniform, class-wide conduct on the part of the defendant. *Parsons*, *supra*, 754 F.3d at 688. This requirement is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class a whole." *Id*.; *See also Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). "That inquiry does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries." *Parsons*, *supra*, 754 F.3d at 688.

In this case, Akhlaghi and the class members are all seeking declaratory and injunctive relief to remedy the same conduct on the part of Cigna: Cigna's uniform practice of improperly denying all requests and/or claims for Lipedema Surgery as "experimental, investigational or unproven." Cigna applies this categorical bar in all circumstances and to all members, regardless of the member's individual medical profile. All members were affected by Cigna's policy and practice in the same way: they were denied coverage for Lipedema Surgery.

### c. Ascertainability.

"Ascertainability" refers to identifiability, i.e., "that the members of a class are identifiable at the moment of certification." *Shelton v. Bledsoe*, 775 F.3d 554, 559 (3d Cir. 2015).  The requirement of ascertainability is "less pressing in an action under

14

Rule 23(b)(1) or 23(b)(2)[.]" *Escalante, supra*, 309 F.R.D. at 621; *see also* Federal Judicial Center, *Manual for Complex Litigation, Fourth* at section 21.222 (2004). The ascertainability requirement was designed for Rule 23(b)(3) actions, which involve the distribution of money and therefore "require a class definition that will permit the identification of individual class members." Federal Judicial Center, *Manual for Complex Litigation, Fourth* at section 21.222 (2004).

Additionally, the Ninth Circuit follows those circuits that find no administrative feasibility requirement even in Rule 23(b)(3) damage classes. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017). Thus, to the extent an ascertainability prerequisite applies in a Rule 23(b)(1) and (2) case such as this, the only inquiry is whether the proposed class members can be identified through objective criteria.

Here, there is no question that class members can be identified through objective criteria: Whether they were covered under an ERISA health plan, self-funded or fully insured, that was administered by Cigna; and whether they had a claim for liposuction treatment of their lipedema denied as experimental, investigational or unproven.

In sum, the proposed Class meets all the elements of Rule 23. The Court should certify the proposed Class for settlement purposes.

**B.      The proposed settlement warrants preliminary approval.**

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992). The settlement of a certified class action must be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2).

Courts employ a two-step process in approving settlements under Rule 23(e). A settlement is preliminarily approved for the purpose of providing notice to class members and setting a final approval hearing date to make a final determination about the settlement's fairness. At the final approval hearing the court grants or

denies final settlement approval after assessing the settlement's reasonableness and any objections raised. *Manual for Complex Litigation, supra,* § 21.632.

The preliminary approval step requires the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms . . . ." *Manual for Complex Litigation, supra,* § 21.632. At this preliminary approval step, the Court must conduct a prima facie review of the relief provided by the settlement and the proposed notice to determine that notice should be sent to the Settlement class members. *Newberg on Class Actions*, § 13.13 (5th ed. 2016) ("Bearing in mind that the primary goal at the preliminary review stage is to ascertain whether notice of the proposed settlement should be sent to the class, courts sometimes define the preliminary approval standard as determining whether there is 'probable cause' to submit the [settlement] to the class members and [to] hold a full-scale hearing as to its fairness.")

Preliminary approval of a settlement should be granted if the proposed settlement falls within the range of what could be found "fair, adequate and reasonable" so that notice may be given to the proposed class and a hearing for final approval can be scheduled. *Officers for Justice*, *supra*, 688 F.2d at 625. The Court's review is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 625; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). This is a minimal threshold:

> Preliminary approval of a settlement and notice to the proposed class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." *In re Tableware Antitrust* Litig., 484 F.Supp.2d 1078, 1079 (N.D.Cal.2007) (citation omitted).

*Otey v. CrowdFlower, Inc.*, 2014 WL 1477630, *10 (N.D. Cal. 2014).

Here, the Settlement satisfies the standard for preliminary approval, as there is no question that it was negotiated in good faith and presents a fair, reasonable, and adequate resolution of this certified class.

### 1.   The Settlement is the product of good faith, informed, arm's-length negotiations between experienced counsel.

Akhlaghi is represented by counsel who have extensive experience in the litigation of insurance class actions and have successfully prosecuted other class actions over policyholders' rights to health benefits. (Gianelli Decl. at ¶¶ 2-4.) Cigna's counsel is a law firm that has expertise in health care matters and that regularly represents Cigna and other health plans.

In addition to participating in formal discovery, Class Counsel engaged in extensive investigation regarding Cigna's bases for refusing to cover Lipedema Surgery, engaged in extensive investigation and research regarding the safety and effectiveness of Lipedema Surgery, and consulted with experts on Lipedema Surgery and the corresponding body of medical literature addressing this topic. (Gianelli Decl. at ¶ 27.)

The parties' attempts to settle this case began only after extensive discovery and motion practice had occurred in April 2021, and entailed the robust exchange of information (including expert information). (Gianelli Decl., ¶ 28.) The parties engaged in extensive and vigorous settlement negotiations over the next six months until they reached a settlement on November 22, 2021. (*Id*.)

Accordingly, the Settlement reached in this matter represents the end-result of an adversarial process where the interests of the class were vigorously and fully represented by Class Counsel.

### 2.   The Settlement obtains the relief sought by the class demonstrating beyond question that the Settlement is within the range of reasonableness.

It is well settled that, in assessing the reasonableness of a class action settlement, "the relief provided to the class cannot be assessed in a vacuum" but

1  rather must be weighed against what the class stood to gain from litigating the case to

2  conclusion. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1123 (9th Cir. 2020). *See*

3  *also*, *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v.*

4  *Anderson*, 390 U.S. 414, 424-425 (1968) ("Basic to [the] process [of evaluating

5  settlements] ... is the need to compare the terms of the compromise with the likely

6  rewards of litigation."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.

7  1998) (relevant considerations include not only "the amount offered in settlement,"

8  but also "the strength of the plaintiffs' case," *i.e.*, what plaintiffs could expect from

9  further litigation).

10     Moreover, in assessing reasonableness, the Court must keep in mind that

11  "[s]ettlement is the offspring of compromise; the question we address is not whether

12  the final product could be prettier, smarter or snazzier, but whether it is fair, adequate

13  and free from collusion." *Hanlon*, 150 F.3d at 1027.

14     This case was brought because Cigna denied all requests for tumescent

15  liposuction to treat lipedema as "experimental, investigational or unproven" despite

16  the fact that Lipedema Surgery has proven to be a safe and effective treatment for

17  lipedema, a progressive, debilitating disease. Akhlaghi was denied coverage for

18  Lipedema Surgery for this reason. Plaintiff and the Class sought an injunction

19  requiring Cigna to provide notice to members who have had requests for Lipedema

20  Surgery to treat their lipedema denied, to re-review the denied claims under the

21  proper standard, and make payment where appropriate. (Dkt. 1 at ¶ 61.)

22     The proposed settlement is reasonable because it effectively provides the relief

23  requested. Litigating this matter to conclusion would provide Plaintiff and the class

24  no further benefit.

25     To begin with, as a direct result of this litigation, Cigna has agreed to reverse

26  its "experimental, investigational or unproven" coverage position with respect to

27  Lipedema Surgery, and the Parties have agreed to the medical criteria that must be

28  met in order for a request for Lipedema Surgery to be approved. These policy

changes, embodied by Cigna's New Coverage Policy effective October 20, 2021, are built into the Settlement. Cigna has agreed not to change its position on the "proven" status of Lipedema Surgery, and the medical criteria it will apply to determine eligibility for the procedure, unless such change is warranted by a change in the medical literature.

Class-wide injunctive relief that achieves the fundamental aims of the lawsuit meets approval requirements. *Hanlon*, 150 F.3d at 1027 (approving settlement that "obligate[d] Chrysler to make the minivans safe"). Effecting a change in Cigna's coverage position was the fundamental objective of this lawsuit. Under *Hanlon*, Cigna's agreement to change its coverage position alone merits a finding of reasonableness.

But the settlement here goes further. Not only does it require Cigna to cover Lipedema Surgery on a going forward basis, pursuant to its New Coverage Policy, it requires Cigna to remedy prior erroneous claim denials through the relief of claim reprocessing under Cigna's New Coverage Policy. (Ex. 1 at ¶¶ 11, 12.) The Ninth Circuit has expressly held that reprocessing under the correct standard is the ***only*** appropriate relief under ERISA for class members whose requests for Lipedema Surgery were previously and wrongfully denied as "unproven." *Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan,* 85 F.3d 455, 460-461 (9th Cir. 1996) ("[R]emand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination."); *Des Roches v. California Physicians' Service,* 320 F.R.D. 486, 508 (N.D. Cal. 2017) (in certifying ERISA class under FRCP 23(b)(2) held that under *Saffle*, the appropriate "final" remedy for class members with denied claims was to require insurer to reprocess benefit denials under revised guidelines); *Wit v. United Behavioral Health,* 317 F.R.D. 106, 136-136 (N.D. Cal. 2016) (in certifying ERISA

1   class under FRCP 23(b)(2) held injunctive relief that required defendant to re-process

2   previously denied requests under a correct standard was appropriate relief).

3        In sum, the Settlement is well within the range of reasonableness. It cements a

4   sea change in Cigna's coverage position regarding Lipedema Surgery, accomplishing

5   the fundamental purpose of the subject lawsuits. It ***also*** guarantees class members the

6   opportunity for reimbursement or re-review of their Lipedema Surgery claims under

7   Cigna's revised coverage position, the maximum relief to which they are entitled

8   under ERISA.

9              **3.      No preferential treatment for the class representative.**

10       As part of the Settlement, Akhlaghi receives the same benefit as other class

11  members. Her request for reimbursement of expenses incurred for Lipedema Surgery

12  will be submitted to Cigna for reimbursement under the New Coverage Policy that

13  will now cover Lipedema Surgery under appropriate eligibility criteria.

14       The proposed settlement also provides that Akhlaghi will receive an incentive

15  award of $15,000. (Ex. 1 at ¶ 14.) This is a reasonable amount given Akhlaghi's

16  efforts in pursuing the obtained relief for the class.

17              **4.      The views of experienced counsel.**

18       Akhlaghi's counsel are experienced in cases of this nature having certified and

19  tried cases against health plans over their refusals to provide benefits. *Gallimore v.*

20  *Kaiser Foundation Health Plan, Inc.*, Alameda Superior Court, Case No.

21  RG12616206 (judgment obtained for class against California's largest health plan

22  over its systematic denial of reconstructive surgery benefits); *Arce v. Kaiser*

23  *Foundation Health Plan, Inc.*, Los Angeles Superior Court, Case No. BC388689

24  (recovery of benefits from health plan for class of autistic children); *Escalante v.*

25  *California Physicians Service dba Blue Shield of California* (C.D. Cal.) Case No.

26  2:14-CV-3021 (reversal of health insurer's position on lumbar artificial disc

27  replacement surgery); *Ticconi v. Blue Shield Life & Health Ins. Co.*, Los Angeles

28  Superior Court, Case No. BC330989 (reversal of health insurer's practice of

rescinding policies). (Gianelli Decl., ¶ 3.)

It is the view of Class Counsel that the Settlement is reasonable, fair, and adequate. (Gianelli Decl. at ¶ 29.) The Settlement should be preliminarily approved.

## V.   PROPOSED SCHEDULE

Based on the foregoing, Akhlaghi respectfully requests that the Court set the following schedule for the dissemination of the class notice and the setting of the final approval hearing in this case:

| Event | Event Date |
|---|---|
| Cigna provides the notice required under the Class Action Fairness Act pursuant to 28 U.S.C. § 1715. | Within 10 days after Plaintiff files a motion for preliminary approval |
| Cigna provides mailing data for Class Members to the Settlement Administrator | 20 days after the date of the Preliminary Approval Order |
| The Administrator mails the notice of the proposed Settlement | 34 days after the date of the Preliminary Approval Order |
| Class Counsel files a motion for an award of attorneys' fees and costs | 34 days after the date of the Preliminary Approval Order |
| Deadline for postmarking of exclusions, objections, and requests to be heard at the Final Approval Hearing | 94 days after the date of the Preliminary Approval Order |
| Class Counsel to file notice specifying those who have objected, together with a declaration of the Settlement Administrator | 104 days after the date of the Preliminary Approval Order |
| Class Counsel to file motion for final approval | 28 days prior to the Final Approval Hearing |
| Final Approval Hearing | To be set by the Court, at least 132 days after the date of the Preliminary Approval Order |

1

## VI.    CONCLUSION

2      For the reasons set forth above, Akhlaghi respectfully requests that the Court

3 certify the Class for settlement purposes, appoint Gianelli & Morris as Class Counsel

4 and Banafsheh Akhlaghi as the class representative, preliminarily approve the

5 Settlement, direct that notice be sent to class members, and set a Final Approval

6 Hearing.

7

8 DATED:  November 30, 2021                 GIANELLI & MORRIS

9

10                                          By:___/s/ Joshua S. Davis_____
                                               ROBERT S. GIANELLI
11                                             JOSHUA S. DAVIS
                                               ADRIAN J. BARRIO
12                                             Attorneys for Plaintiff
                                               BANAFSHEH AKHLAGHI
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28