1   ROBERT S. GIANELLI, #82116
2   TIMOTHY J. MORRIS, #80440
    JOSHUA S. DAVIS, #193187
3   ADRIAN J. BARRIO, #219266
4   GIANELLI & MORRIS, A Law Corporation
    550 South Hope Street, Suite 1645
5   Los Angeles, CA 90071
6   Tel: (213) 489-1600; Fax: (213) 489-1611
    rob.gianelli@gmlawyers.com
7   tim.morris@gmlawyers.com
8   joshua.davis@gmlawyers.com
    adrian.barrio@gmlawyers.com
9
10  Attorneys for Plaintiff
    BANAFSHEH AKHLAGHI,
11  on behalf of herself and all others
12  similarly situated

13                **UNITED STATES DISTRICT COURT**

14          **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND**

15

16
    BANAFSHEH AKHLAGHI, on behalf of ) Case No.: 4:19-cv-3754- JST (JCSx)
17  herself and all others similarly situated, ) Assigned to Hon. Jon S. Tigar, CR6
                                              )
18                              Plaintiff,    ) **NOTICE OF MOTION AND**
19                                            ) **MOTION FOR FINAL APPROVAL**
          v.                                  ) **OF CLASS ACTION**
20                                            ) **SETTLEMENT; MEMORANDUM**
    CIGNA CORPORATION; CIGNA                  ) **OF POINTS AND AUTHORITIES**
21  HEALTH AND LIFE INSURANCE                 )
22  COMPANY,                                  ) **[Redacted Version]**
                            Defendants.       )
23                                            )
                                              ) Date: February 23, 2023
24                                            ) Time: 2:00 p.m.
25                                            ) Place: Courtroom 6
26
27
28

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 23, 2023 at 2:00 p.m. in Courtroom 6 of the above-entitled Court, Plaintiff will move the Court under Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, and 29 U.S.C. section 1132(g)(1), for an order: (1) finding that the Class Notice has been adequate and reasonable, met the requirements of Rule 23, and has constituted the best notice practicable under the circumstances; (2) granting final approval of the proposed class action Settlement; and (3) directing entry of Final Judgment, dismissing the action (including all individual and class claims presented thereby) on the merits with prejudice.

This Motion is based on this Notice of Motion and Motion, the attached memorandum of points and authorities in support thereof, the Declaration of Ryan Chumley of Angeion Group, LLC re: Settlement Administration and the Declaration of Joshua S. Davis. This Motion is also based on Plaintiffs' Motion for Approval of Attorneys' Fees and Class Representative Service Awards ("Fee Motion"), filed on July 8, 2022 (Dkt. 105); the declarations and exhibits submitted in support of the Fee Motion; the entire record in this proceeding, including but not limited to the Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Dkt. 95); the Court's findings and conclusions contained in its Order Granting Motion for Preliminary Approval of Class Action Settlement (Dkt. 101, 103); the Court's files and records in this matter; and upon such other matters as may be presented at the time of the hearing.

DATED:      January 19, 2023                    GIANELLI & MORRIS

                                         By:  /s/ Adrian J. Barrio
                                                ROBERT S. GIANELLI
                                                JOSHUA S. DAVIS
                                                ADRIAN J. BARRIO
                                                Attorneys for Plaintiffs

# TABLE OF CONTENTS

*Page*

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.      INTRODUCTION..................................................................1

II.     SUMMARY OF THE LITIGATION.............................................2

III.    THE SETTLEMENT SHOULD BE FINALLY APPROVED................2

        A.      The Class Notice was adequate and effective...........................3

                1.      The Administrator has provided the best practicable notice
                        of the settlement to the Class Members in the manner
                        directed by this Court...................................................3

                2.      The Class Notice adequately advises Class Members of the
                        Settlement.................................................................4

        B.      The Settlement is fundamentally fair, adequate and reasonable.........5

                1.      Strength of the Class Claims......................................5

                2.      Risk and expense of further litigation.............................8

                3.      Risk of maintaining class action status through trial.............8

                4.      Amount and benefits of the Settlement............................8

                5.      Extent of discovery and stage of proceedings, including the
                        absence of collusion...................................................10

                6.      Experience and views of counsel...................................12

                7.      The reaction of the Class has been overwhelmingly positive
                        and strongly supports approval.....................................12

        C.      All CAFA requirements have been satisfied............................14

IV.     CONCLUSION..................................................................15

**TABLE OF AUTHORITIES**

***Page(s)***

*Bayat v. Bank of the West,*
    No. C–13–2376 EMC, 2015 WL 1744342 (N.D. Cal. April 15, 2015)……..8

*Boldon v. Humana Ins. Co.,*
    466 F.Supp.2d 1199 (D. Az. 2006)…………………………………………….6

*Churchill Village, LLC v. General Electric,*
    361 F.3d 566 (9th Cir. 2004)…………………………………………………...4

*Class Pls. v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992)…………………………………………………5

*Davis v. City & Cnty. of San Francisco,*
    890 F.2d 1438 (9th Cir.1989)…………………………………………………..5

*Des Roches v. California Physicians' Service,*
    320 F.R.D. 486 (N.D. Cal. 2017)……………………………………………..6

*Escalante v. California Physicians' Service,*
    309 F.R.D. 612 (C.D. Cal. 2015)……………………………………………..6

*Filipowicz v. American Stores Benefit Plans Comm.,*
    56 F.3d 807 (7th Cir. 1995)……………………………………………………6

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)…………………………………………………8

*In re Integra Realty Res., Inc.,*
    262 F.3d 1089 (10th Cir. 2001)……………………………………………….4

*In re Mego Financial Corp. Securities Litigation,*
    213 F.3d 454 (9th Cir. 2000)…………………………………………………..5

*In re Pacific Enterprises Securities Litigation,*
    47 F.3d 373 (9th Cir. 1995)…………………………………………………..12

*In re Syncor ERISA Litigation,*
    516 F.3d 1095 (9th Cir. 2008)…………………………………………………2

ii

# TABLE OF AUTHORITIES

***Page(s)***

*In re TOYS "R" US-DELAWARE, INC.,*
    295 F.R.D. 438 (C.D. Cal. 2014)…………………………………………..12

*Lane v. Brown,*
    166 F.Supp.3d 1180 (D. Or. 2016)………………………………….8,9,10

*Monterrubio v. Best Buy Stores, LP.,*
    291 F.R.D. 443 (E.D. Cal. 2013)………………………………………….3

*Mullane v. Cent. Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950)………………………………………………………3

*Nat'l Rural Telecommunications Cooperative v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004)………………………………...2,5,10,11

*Officers for Justice v. Civil Service Commission,*
    688 F.2d 615 (9th Cir. 1982)……………………………………………2,6

*Rodriguez v. West Publishing Corp.,*
    563 F.3d 948 (9th Cir. 2009)……………………………………………12

*Saffle v. Sierra Pac. Power Co. Bargaining Unit Long
Term Disability Income Plan,*
    85 F.3d 455 (9th Cir. 1996)………………………………………………9

*Schleibaum v. Kmart Corp.,*
    153 F.3d 496 (7th Cir. 1998)……………………………………………10

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir.1993)………………………………………………..5

***Statutes***

28 U.S.C.
    §
1715……………………………………………………………………14,15

1

## TABLE OF AUTHORITIES

2

***Page(s)***

3  Federal Rule of Civil Procedure

4      Rule 23……………………………………………………...Passim

5      Rule 30…………………………………………………………10,11

6  The Class Action Fairness Act of 2005 ("CAFA")……………………………14,15

7

8  ***Treatises***

9  Manual For Complex Litigation, Third, § 30.14 (1995)…………………………...2

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3          On September 26, 2022, the Court preliminarily approved the Settlement

4    Agreement ("the Settlement") between Plaintiff Banafsheh Akhlaghi ("Plaintiff"), on

5    the one hand, and Defendant Cigna Health and Life Insurance Company ("Cigna"), on

6    the other, finding it fair, adequate, reasonable, and within the realm of possible final

7    approval. (Order Granting Motion for Preliminary Approval of Class-Action

8    Settlement *As Modified* ("Preliminary Approval Order"), Dkt. 101.)[1] Nothing has

9    occurred since then to deviate from that finding.

10         Plaintiff respectfully requests that the Court finally approve the Settlement,

11    which provides substantially all of the relief requested in the pleadings. Indeed, as a

12    direct result of this litigation, Cigna has agreed to reverse its "experimental,

13    investigational or unproven" coverage position with respect to Lipedema Surgery, and

14    the parties have agreed to the medical criteria that must be met in order for a request

15    for Lipedema Surgery to be approved. These policy changes, embodied by Cigna's

16    New Coverage Policy effective October 20, 2021, are built into the Settlement. Cigna

17    has agreed not to change its position on the "proven" status of Lipedema Surgery, and

18    the medical criteria it will apply to determine eligibility for the procedure, unless such

19    change is warranted by a change in the medical literature. (Settlement Agreement,

20    Dkt. 95-1, at Ex. 1, ¶ 10.) The Settlement also affords retrospective injunctive relief,

21    requiring Cigna to reprocess the class members' previously denied claims using the

22    new coverage criteria. (*Id*., ¶¶ 11, 12.)

23         The parties reached this Settlement after extensive, arms-length negotiations,

24    which followed more than two years of hard-fought litigation. Through these

25    numerous battles, discovery and investigation, and consultation with experts, the

26

27    _____

[1] On September 30, 2023, the Court issued an amended order that correct a "typographical error"
28    only. (Amended Order Granting Motion for Preliminary Approval of Class-Action Settlement *As
Modified*, Dkt. 103, at fn. 1.) "In all other respects, the orders are identical." (*Id*.)

1  parties were made aware of the strengths and weaknesses of the claims and defenses

2  and well positioned to assess the fairness, adequacy, and reasonableness of the

3  Settlement against the risks and uncertainties of continued litigation.

4       As required by the relevant Ninth Circuit authority and Rule 23(e) of the

5  Federal Rules of Civil Procedure, the Settlement is fundamentally fair, adequate and

6  reasonable. Further, the Class Notice has satisfied Rule 23(c)(2)(B) and (e)(B), and

7  has provided the best notice practicable under the circumstances. Accordingly, the

8  Court should issue a final order and judgment certifying the Class and granting final

9  approval of the Settlement.

10 **II.    SUMMARY OF THE LITIGATION**

11      For a history of the litigation, summary of the settlement negotiations, and a

12 discussion of the settlement terms, see Plaintiffs' Motion for Preliminary Approval of

13 Class Action Settlement, the supporting declaration of Class Counsel to that motion,

14 and Plaintiffs' Motion for Approval of Attorneys' Fees and Class Representative

15 Service Awards (Fee Motion). (Dkt. 95; Dkt. 97-1; Dkt. 105.)

16 **III.   THE SETTLEMENT SHOULD BE FINALLY APPROVED**

17      Rule 23(e)(1)(A) requires that the "claims, issues, or defenses of a certified

18 class may be settled, voluntarily dismissed, or compromised only with the court's

19 approval." Approval under Rule 23 involves a two-step process "in which the [c]ourt

20 first determines whether a proposed class action deserves preliminary approval and

21 then, after notice is given to the class members, whether final approval is warranted."

22 *Nat'l Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 525

23 (C.D. Cal. 2004) (citing MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.14,

24 at 236-37 (1995). The Ninth Circuit has noted that, in considering whether to finally

25 approve a settlement, "there is a strong judicial policy that favors settlements,

26 particularly where class action litigation is concerned." *In re Syncor ERISA Litigation*,

27 516 F.3d 1095, 1101 (9th Cir. 2008); *Officers for Justice v. Civil Service Commission*,

28 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t must not be overlooked that voluntary

conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation.") *cert denied*, 495 U.S. 1217 (1983).

Here, this Court preliminarily approved the Settlement on September 26, 2022. (Dkt. 101.) As explained below, notice has been given to the Class Members in accordance with the Court's directions. The Settlement Administrator has received zero objections and no requests for exclusion.[2] Nothing has changed that would cause this Court to deviate from its preliminary finding.

**A.    The Class Notice was adequate and effective.**

**1.    The Administrator has provided the best practicable notice of the settlement to the Class Members in the manner directed by this Court.**

Rule 23(e) requires that "notice of the proposed dismissal and compromise [of a class action] shall be given to all members of the class in such a manner as the court directs." Notice by mail is sufficient to provide due process to known affected parties, so long as the notice is "reasonably calculated ... to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Monterrubio v. Best Buy Stores, LP.*, 291 F.R.D. 443, 452 (E.D. Cal. 2013) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

In its September 26, 2022 Order Preliminarily Approving the Class Settlement, the Court approved the notice provisions in paragraphs 20-26 of the Settlement and the form of the Class Notice attached to the Settlement as Exhibit A. (Dkt. 101 at ¶ 11.) The Court further directed the Settlement Administrator to both mail the Class Notice to the identified Class Members by first-class mail and email to his or her last known address no later than 34 days after entry of the order. (*Id.* at ¶ 9.)

Pursuant to the Court's Orders, the Settlement Administrator provided Class Notice to the 239 identified Class Members by mail on October 28, 2022. (Declaration of Ryan Chumley of Angeion Group re Settlement Administration

---

[2] The deadline for exclusions and objections was December 30, 2022.

("Chumley Decl."), ¶ 7.) As of January 19, 2023, zero mailed notices had been returned with a forwarding address. (*Id*. at ¶ 8.)

As of January 19, 2023, a total of 10 of the initial Notices mailed have been returned by the USPS as undeliverable without a forwarding address. (Id. at ¶ 9.) The 10 undeliverable Notices without a forwarding address were processed through address verification searches ("skip trace"). (*Id*.) Of the 10 records subjected to a skip trace, a new address was located for 8 of them. (*Id*.) The class administrator, Angeion Group, LLC ("Angeion"), updated the Settlement Class Member database and re-mailed Notices to the 8 Settlement Class Members to the updated addresses obtained via the skip trace process. ) (*Id*.) Of the re-mailed Notices, none have been returned by the USPS a second time. (*Id*.)

Thus, 99.16 percent of the Class Members (237 out of 239) received the Class Notice. That is more than sufficient to satisfy Rule 23(c). *See, e.g., In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110-1118 (10th Cir. 2001) (Rule 23 and due process satisfied where 77% of class members received notice of settlement.).

### 2. The Class Notice adequately advises Class Members of the Settlement.

Notice is satisfactory if it "'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, LLC v. General Electric,* 361 F.3d 566, 575 (9th Cir. 2004). In addition, Rule 23(h)(1) requires that notice of Class Counsel's request for attorneys' fees be "directed to class members in a reasonable manner." The *Akhlaghi* Class Notice easily satisfies these requirements.

The Class Notice clearly and concisely states in plain, easily understood language the nature of the action, the defined Class, the class claims, issues and defenses, the terms of the Settlement, including attorneys' fees paid to Class Counsel, that a Class Member may object to the Settlement, that the Court will exclude anyone from the *Akhlaghi* Class who requests exclusion, the time and manner for requesting

exclusion or objecting to the Settlement, and the binding effect of a class judgment on members under Rule 23(c)(3). (*See* Ex. B to Chumley Decl.) Thus, the Class Notice adequately informed Class Members of the proposed Settlement.

**B.     The Settlement is fundamentally fair, adequate and reasonable.**

The Ninth Circuit has interpreted Rule 23(e) to require the district court to determine whether a proposed settlement is "fundamentally fair, adequate and reasonable." *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 458 (9th Cir. 2000). To make this determination, courts "may consider some or all of the following factors," including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Id.* In addition, the settlement cannot be the product of collusion among the negotiating parties. *Class Pls. v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992).

Not all factors will apply to every class action settlement, and certain factors may predominate depending on the nature of the case. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir.1993). "The degree of importance attached to each factor is determined by the nature of the claim, the type of relief sought and the facts and circumstances of each case." *Davis v. City & Cnty. of San Francisco*, 890 F.2d 1438, 1444–45 (9th Cir.1989).

**1.     Strength of the Class Claims.**

A key factor in considering the reasonableness of a settlement "is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks and citation omitted). However, the court's role is not "to reach any ultimate conclusions on the contested issues of fact

and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

The strength of the class claims in this case weighs decisively in favor of settlement approval. This case was brought to address Cigna's practice of denying all requests for tumescent liposuction to treat lipedema as "experimental, investigational or unproven" pursuant to its internal coverage guideline, Medical Coverage Policy No. 0531, Surgical Treatments for Lymphedema and Lipedema (hereinafter, "Medical Coverage Policy No. 0531").

The crux of Akhlaghi's denial of benefits claim is that, because Medical Coverage Policy No. 0531 wrongly classifies Lipedema Surgery, i.e., specialized liposuction to treat lipedema, as an "experimental, investigational or unproven" procedure excluded from coverage under Akhlaghi's health plan, Cigna unreasonably relied upon such guideline to deny Akhlaghi's claim for Lipedema Surgery. This is a well-recognized denial of benefits theory in ERISA cases, in both the individual and class action contexts. *See, e.g., Boldon v. Humana Ins. Co.*, 466 F.Supp.2d 1199 (D. Az. 2006) (ERISA insurer abused its discretion in denying coverage for medical treatment on the basis of an internal coverage guideline that incorrectly classified such treatment as "experimental or investigational" and excluded from coverage); *Filipowicz v. American Stores Benefit Plans Comm.*, 56 F.3d 807, 815 fn. 6 (7th Cir. 1995) ("interpretive guideline cannot limit coverage provided by the insurance contract"); *Escalante v. California Physicians' Service*, 309 F.R.D. 612, 617-621 (C.D. Cal. 2015) (certifying class of Blue Shield members whose claims for lumbar artificial disc replacement surgery were denied on the basis of a coverage guideline that violated the plan's "investigational" exclusion); *Des Roches v. California Physicians' Service,* 320 F.R.D. 486, 496-500 (N.D. Cal. 2017) (collecting cases and certifying class of Blue Shield members whose requests for coverage were denied on

the basis of erroneous medical necessity criteria guidelines).

Plaintiff's position that Medical Coverage Policy No. 0531 wrongly classifies Lipedema Surgery as "experimental, investigational or unproven" is well founded. Indeed, far from being an unproven and untested treatment, Lipedema Surgery is recognized as

> the only effective treatment option to treat the disability and pain that results from advanced lipedema. Liposuction is the primary surgical treatment to debulk the fatty tissue overgrowth. It involves extracting the adipose tissue with the use of a blunt cannula connected to a suction device. The tissue is infiltrated with a tumescent solution that contains an anesthetic to numb the area, epinephrine to decrease bleeding, and saline to cause hydro-dissection of the adipose tissue and separate it from the surrounding connective tissue for ease of removal. Multiple small incisions are made circumferentially in the extremity and the fat is suctioned out through the cannula. For each patient, it generally takes between 4-5 surgeries to address the lipedema. In my 9 years of experience and having treated over 80 patients with this condition, it is my opinion that liposuction surgery is the most effective form of treatment. It is a well-tolerated and minimally invasive procedure that allows for large volume removal without the risks for wound healing complications and long recovery period. The benefit is immediate and long lasting; patients experience immediate improvement in their balance and mobility, significant pain reduction is observed by 3 months after surgery, volume reduction and symptomatic improvement are maintained well beyond 5-7 years after surgery.

(Declaration of Dung Nguyen, M.D., in support of Motion for Preliminary Approval, Dkt. 95-2 at ¶ 9.)

By contrast, "[c]onservative treatment including supplements, dietary changes and exercise are good at enhancing the patient's well-being, but have variable effect on the condition and are largely ineffective[.]" (*Id*. at ¶ 8.) Likewise, "[c]ompression therapy, manual lymphatic drainage and complex decongestive physiotherapy are treatment approaches to improve lymph flow and reduce the swelling and edema related to lipedema, but they also cannot reverse or remove the excessive build-up of fatty tissue that is responsible for the patient's physical and functional disability." (*Id*.)

### 2.    Risk and expense of further litigation.

Despite the strength of Plaintiff's position, had this case not settled, the parties faced an expensive, multi-week trial. Indeed, although the parties "had already incurred significant litigation expenses, the cost of preparing for and handling the trial with a number of expert witnesses on both sides would have been enormous." *Lane v. Brown*, 166 F.Supp.3d 1180, 1189 (D. Or. 2016). Cigna would argue that even if its coverage position was wrong, it was not unreasonable and thus it did not abuse its discretion. Moreover, "no matter who won at trial, an appeal was likely, adding further costs." *Id*. Finally, even if Plaintiff and the Class prevailed, "the precise nature and scope of relief ordered by the court may not have been as comprehensive or detailed as contained in the Agreement and could have taken potentially many more years to implement." *Id*. The risk and expense of further litigation thus weigh in favor of approval. *Id*.

### 3.    Risk of maintaining class action status through trial.

The parties' settlement eliminates any risk of decertification and "immunizes the class certification order from attack by [Anthem]." *Lane*, *supra*, 166 F.Supp.3d at 1189. This factor weighs in favor of approval. *Id*.

### 4.    Amount and benefits of the Settlement.

"[T]he critical component of any settlement is the amount of relief obtained by the class." *Lane*, *supra*, 166 F.Supp.3d at 1189 (quoting *Bayat v. Bank of the West*, No. C–13–2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. April 15, 2015)). A settlement that provides for "comprehensive and substantial" injunctive relief weighs strongly in favor of approval. *Lane*, *supra*, 166 F.3d at 1189 (approving injunctive relief settlement that, among other things, required the State of Oregon to "create and implement a number of policies and practices to facilitate compliance with the [Americans with Disabilities Act of 1990]"). *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (approving injunctive relief settlement that "obligate[d]" the defendant to "make [its] minivans safe").

1    To remedy Cigna's practice of categorically denying claims for Lipedema

2 Surgery on experimental, investigational or unproven" grounds, Plaintiff and the

3 Class sought an injunction requiring Cigna to provide notice to members who have

4 had requests for Lipedema Surgery to treat their lipedema denied, to re-review the

5 denied claims under the proper standard, and make payment where appropriate. (Dkt.

6 1 at ¶ 61.)

7    The proposed Settlement provides substantially all of the relief requested. To

8 begin with, as a direct result of this litigation, Cigna has agreed to reverse its

9 "experimental, investigational or unproven" coverage position with respect to

10 Lipedema Surgery, and the Parties have agreed to the medical criteria that must be

11 met in order for a request for Lipedema Surgery to be approved. These policy

12 changes, embodied by Cigna's New Coverage Policy effective October 20, 2021, are

13 built into the Settlement. Cigna has agreed not to change its position on the "proven"

14 status of Lipedema Surgery, and the medical criteria it will apply to determine

15 eligibility for the procedure, unless such change is warranted by a change in the

16 medical literature.

17    Class-wide injunctive relief that achieves the fundamental aims of the lawsuit

18 meets approval requirements. *Hanlon*, 150 F.3d at 1027 (approving settlement that

19 "obligate[d] Chrysler to make the minivans safe"). Effecting a change in Cigna's

20 coverage position was the fundamental objective of this lawsuit.

21    In addtion to requiring Cigna to cover Lipedema Surgery on a going forward

22 basis, pursuant to its New Coverage Policy, the Settlement requires Cigna to remedy

23 prior erroneous claim denials through the relief of claim reprocessing under Cigna's

24 New Coverage Policy. (Settlement Agreement, Dkt. 95-1, at Ex. 1, ¶¶ 11, 12.)

25 Reprocessing under the correct standard is the *only* appropriate relief under ERISA

26 for class members whose requests for prostheses benefits were denied in violation of

27 the plans' "minimum specifications" provision and/or ERISA claim regulations.

28 *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*,

85 F.3d 455, 460-461 (9th Cir. 1996) (reprocessing is appropriate injunctive relief for denial of plan benefits when an ERISA administrator violates terms of plan or applies wrong standard in making a benefit determination); *Schleibaum v. Kmart Corp.*, 153 F.3d 496, 503 (7th Cir. 1998) ("Normally, in an action for an inadequate denial letter, the remedy is to remand the case to the administrator for a full and fair hearing of the claim[.]").

Thus, the Settlement provides "comprehensive and substantial" injunctive relief to the Class and weighs strongly in favor of approval. *Lane*, *supra*, 166 F.3d at 1189. It cements a sea change in Cigna's practices for adjudicating Lipedema Surgery claims, and provides redress for previously denied Lipedema Surgery claims, accomplishing the fundamental purpose of the subject lawsuits.

### 5. Extent of discovery and stage of proceedings, including the absence of collusion.

The extent of discovery completed and the state of the proceedings at the time of settlement is an indicator of whether the parties have a sufficient understanding of each other's cases to make an informed judgment about their likelihood of prevailing. Typically, "[a] court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomm. Coop.*, *supra*, 221 F.R.D. at 527 (internal quotation marks and citation omitted). For that reason, "[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Id.* at 528.

The Parties' settlement occurred over two years after this action was filed and was well informed by the discovery and investigation completed up to that point. (Declaration of Robert Gianbelli in Support of Motion for Preliminary Approval ("Gianelli Decl."), Dkt. 95-1, at ¶ 20.) At the time of settlement, Cigna had produced over 33,000 pages of information concerning the class and merits issues. (*Id.*) For her part, Plaintiff produced nearly 500 pages of information supportive of her position

1   that Cigna's policies and practices are amenable to class treatment and that Lipedema

2   Surgery is safe and effective. (*Id*.)

3       Plaintiff served and Cigna responded to requests for production of documents,

4   numerous interrogatories and requests for admissions. (Gianelli Dec*.,* ¶ 21.) Cigna

5   also served and Plaintiff responded to interrogatories, requests for production and two

6   sets of requests for admission. (*Id*.) In addition, Plaintiff deposed five Cigna

7   employees and doctors, including FRCP 30(b)(6) witnesses on 20 class and merit

8   topics. (*Id*.)

9       Like every other aspect of this case, discovery was hard fought and contested.

10  (*Id*. at ¶ 22.) Several discovery disputes arose that required Court assistance,

11  particularly in regard to discovery of Cigna's practices prior to the adoption of MCP

12  0531. (*Id*.) On April 10, 2020, the Parties filed a joint letter brief, resulting in a

13  referral to Magistrate Judge Joseph Spero, who held a discovery conference on May

14  1, 2020.  (*Id*.; *see also*, Dkt. 54 and 55.) Following the submission of two additional

15  letter briefs, Judge Spero granted Plaintiff's motion to compel the requested

16  discovery. (*Id*.; *see also*, Dkt. 61, 62 and 63.)

17      Class Counsel supplemented formal discovery with its own investigation and

18  research. (*Id*. at ¶ 23.) Class Counsel engaged in extensive investigation and research

19  regarding the safety and effectiveness of Lipedema Surgery and retained and

20  extensively worked with renowned experts on lipedema, reconstructive surgery, and

21  the body of medical literature addressing it. (*Id*.) As part of the settlement

22  negotiations, the parties also exchanged information concerning the efficacy of

23  liposuction to treat lipedema. (*Id*.)

24      Accordingly, the settlement was reached after the parties achieved "a full

25  understanding of the legal and factual issues surrounding the case," and represents the

26  end-result of an adversarial process where the interests of the *Akhlaghi* Class were

27  vigorously and fully represented by Class Counsel. *Nat'l Rural Telecomm. Coop.*,

28  *supra*, 221 F.R.D. at 527.

1    "Nor is there any dispute that counsel had considerable experience in litigating
2    … class actions, and other complex litigation." *Rodriguez v. West Publishing Corp.*,
3    563 F.3d 948, 967 (9th Cir. 2009). Plaintiff and the Class are represented by counsel
4    who have extensive experience in the litigation of insurance class actions and have
5    successfully prosecuted other class actions over policyholders' rights to health
6    benefits. (Gianelli Decl., Dkt. 95-1, at ¶¶ 2-4.) Cigna is represented by the law firm of
7    Cooley LLP, a firm that has expertise in health care matters and that regularly
8    represents Cigna and other health plans.

9        The Ninth Circuit has held that "[p]arties represented by competent counsel are
10   better positioned than courts to produce a settlement that fairly reflects each party's
11   expected outcome in litigation[.]" *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th
12   Cir. 1995). Thus, this factor weighs in favor of approval.

13                    **6.        Experience and views of counsel.**

14       "The recommendations of plaintiffs' counsel should be given a presumption of
15   reasonableness." *In re TOYS "R" US-DELAWARE, INC.*, 295 F.R.D. 438, 455 (C.D.
16   Cal. 2014). "Parties represented by competent counsel are better positioned than
17   courts to produce a settlement that fairly reflects each party's expected outcome in
18   litigation." *In re Pacific Enterprises, supra,* 47 F.3d at 378.

19       As set forth in the declarations submitted with the Preliminary Approval Motion
20   and Fee Motion, Class Counsel has extensive experience prosecuting insurance class
21   actions, and has represented policyholders in a number of published insurance law
22   decisions. (Dkt. 95-1 at ¶¶ 2-4; Dkt. 105-1 at ¶¶ 2-4.) Class Counsel's belief that the
23   proposed Settlement is fair, adequate and reasonable weighs in favor of approval.
24   (Dkt. 95-1 at ¶ 25.)

25                    **7.        The reaction of the Class has been overwhelmingly positive and**
26                    **strongly supports approval.**

27       The reaction of the Class Members has been overwhelmingly positive,
28   creating a strong presumption that the Settlement is fair, adequate and reasonable. Of

                                            - 12 -

the 239 Class Members, there have been no exclusions and only one objector. (Chumley Decl., ¶¶ 13, 14; Davis Decl., ¶ 2.)  The lone objector, Linda Lusk, has made a narrow objection to the provision in the Settlement that concerns Class Members who have not paid out of pocket for Lipedema Surgery and are no longer members of Cigna.

As explained in the preliminary approval motion, Class Members who are not covered under Cigna as of October 20, 2021, which is the date the preliminary approval motion was filed, and who have not paid unreimbursed amounts for Lipedema Surgery, are ineligible for review. (Dkt. 95 at 14; Settlement Agreement, Dkt. 95-1 at Ex. 1, ¶ 12.) These Class Members, however, release no claims and are free to make a claim with any health plan they have now or will have in the future. (*Id.*)  Moreover, the statute of limitations is tolled from the date of the filing of this action until the Effective Date of the Settlement. (Dkt. 95 at 14, Dkt. 95-1 at Ex. 1, ¶ 8(s).)

The above provision is fair and reasonable.  After careful thought, the Parties included the above provision because most Class Members who are no longer Cigna members will have coverage through a new health plan. There is no way in advance for the Parties to know which Class Members have or don't have coverage with another plan, the scope of that coverage, or whether the Class Member submitted a coverage claim to her new plan. Further complicating matters is that former Cigna members are not in a Cigna network, and thus do not have doctors that have agreed to accept contracted rates, creating additional difficulties for pre-authorizations.

Ms. Lusk's situation demonstrates the Settlement is fair, adequate and reasonable. ██████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████

████████████████████████████████    ████████████████

████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████ This demonstrates the complexity in providing re-review to former members who have not paid out of pocket for the surgery.

The Settlement is fair and reasonable, and Ms. Lusk's objection should be overruled. The important and substantial relief that the Settlement provides to Class Members should not be delayed or denied. ████████████████████████ ████████████████████████████████████████████ Moreover, if she wants to pursue an individual claim against Cigna for the denial she can still do so. Under the Settlement, she has not released any rights she may have against Cigna for its denial and the statutes of limitations on any such lawsuit was tolled.

## C.     All CAFA requirements have been satisfied.

The Class Action Fairness Act of 2005 ("CAFA") requires defendants who settle federal class actions to "serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official...." 28 U.S.C. § 1715(b). As explained in Senate Report 109-14 from the Senate Judiciary Committee, this section "is designed to ensure that a responsible state and/or federal official receives information about proposed class

---

[3] Cigna's New Coverage Policy also has a functional impairment requirement that must be satisfied to obtain Lipedema Surgery. (Dkt. 95-1, Ex. D to Settlement Agreement at p. 1.)

action settlements and is in a position to react if the settlement appears unfair to some or all class members or inconsistent with applicable regulatory policies." S. Rep. No. 109-14, at 32 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3.

Pursuant to the requirements of CAFA, on December 10, 2021, Cigna (through class administrator Angeion) notified the appropriate entities of the Settlement. (Chumley Decl. at ¶ 4.) Angeion has not received any objections to the notice of settlement from the entities served. (*Id*.)

CAFA further provides that "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b)." 28 U.S.C. § 1715(d). Based on the December 10, 2021 service date, above, the 90-day CAFA notice period expired on March 10, 2022.

## IV.    CONCLUSION

For all of the reasons set forth above, Plaintiffs respectfully request that this Court issue an Order: (1) finding that the Class Notice was adequate and reasonable, met the requirements of Rule 23, and constituted the best notice practicable under the circumstances; (2) granting final approval of the Settlement; and (3) directing entry of Final Judgment, dismissing the Action (including all individual and class claims presented thereby) on the merits with prejudice.


DATED:    January 19, 2023                         GIANELLI & MORRIS

By:   /s/ Adrian J. Barrio
                                              ROBERT S. GIANELLI
                                              JOSHUA S. DAVIS
                                              ADRIAN J. BARRIO
                                              Attorneys for Plaintiffs