ROBERT S. GIANELLI, #82116
JOSHUA S. DAVIS, #193187
ADRIAN J. BARRIO, #219266
GIANELLI & MORRIS, A Law Corporation
550 South Hope Street, Suite 1645
Los Angeles, CA 90071
Tel: (213) 489-1600; Fax: (213) 489-1611
rob.gianelli@gmlawyers.com
joshua.davis@gmlawyers.com
adrian.barrio@gmlawyers.com

Attorneys for Plaintiff
BANAFSHEH AKHLAGHI,
on behalf of herself and all others
similarly situated

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND

| | |
|---|---|
| BANAFSHEH AKHLAGHI, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CIGNA CORPORATION; CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>Defendants. | Case No.: 4:19-cv-3754- JST (JCSx)<br>Assigned to Hon. Jon S. Tigar, CR6<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES** |

On February 23, 2023, the Court ordered Plaintiff Banafsheh Akhlaghi ("Plaintiff" or "Akhlaghi") to file a Supplemental Brief in support of her Motion for Attorneys Fees and Costs. (Dkt. 111.) The Court specifically asked Plaintiff to: (1) address the effect of the *Bluetooth* factors on Plaintiff's attorney fee request and (2) provide a more detailed summary of hours divided by category to assist with the Court's reasonableness determination.

## I. Bluetooth factors do not indicate collusion.

In *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011), the Ninth Circuit identified the following three "subtle signs" of collusion that district courts should scrutinize when approving class action settlements: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution, but class counsel are amply rewarded"; (2) "when parties negotiate a 'clear sailing' arrangement" and (3) "when the parties arrange for fees not awarded to revert to the defendant rather than be added to the class fund." *Id.* at 947.

In *Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020), the Ninth Circuit examined the *Bluetooth* factors in affirming the settlement of an injunctive relief class action settlement. As to the first factor, the Ninth Circuit held that the fact the class received no monetary distribution did not weigh against approval of an injunctive relief class settlement. The court explained that further litigation could not result in any meaningful monetary relief to class members, and thus was not a sign that class counsel had bargained away something valuable to benefit themselves. *Id.* at 1126. Relatedly, the Court upheld the district court's finding that class members had received valuable injunctive relief based on its oversight and attendant understanding of the litigation, which involved protections to class member's privacy rights. *Id.* at 1127.

As to the second factor, the Ninth Circuit found no evidence that proves the class would have received more meaningfully injunctive or declaratory relief had the

1

defendant been permitted to oppose class counsel's fee application. *Campbell, supra*, 951 F.3d at 1127. Finally, as to the third factor, the Ninth Circuit held that reversion was inapplicable in an injunctive relief class because it has "no fund into which any fees not awarded by the court could possibly revert." *Id.* at 1127.

Here, the *Bluetooth* factors do not weigh against approval of this excellent class action settlement. This operative Second Amended Complaint ("SAC") alleges an injunctive and declaratory relief class only pursuant to FRCP 23(b)(2) and did not seek any damages as a remedy. (Dkt. 84 at 8.) Thus, this litigation could not result in any meaningful monetary relief to the class. Accordingly, as explained in *Campbell*, that the settlement provides no monetary distribution is not a sign that the class counsel bargained away monetary relief to benefit themselves.

Moreover, there is no question that injunctive relief provided in the Settlement contains significant and substantial value. To begin with, as a direct result of this litigation, Cigna agreed to and did remove its previous "experimental, investigational or unproven" coverage position on Lipedema Surgery from MCP 0531, effective October 20, 2021 (the "New Coverage Policy"). (Settlement Agreement (Dkt 95-1), ¶¶ 8(n), 10.)  The Settlement requires Cigna to cover Lipedema Surgery on a going forward basis, pursuant to its New Coverage Policy, and requires Cigna to remedy prior erroneous claim denials through the relief of claim reprocessing under Cigna's New Coverage Policy. Class Members whose Lipedema Surgery claims were denied as "experimental, investigation or unproven" and who paid out-of-pocket for Lipedema Surgery can make claims for reimbursement. (Settlement, ¶ 11.) If the Class Member satisfies the criteria for the surgery under the New Coverage Policy, which was vetted by Plaintiff's expert, Cigna will reimburse the Class Member for their out-of-pocket expenses. (*Id.*)  For Class Members who have not yet had the surgery, they can request re-review by submitting a new request for approval for the surgery pursuant to the terms of their existing Cigna contracts and the New Coverage Policy. (*Id.*)

While a specific dollar value cannot be assigned the injunctive relief provided in this Settlement because it is not known who had the surgery in the past, how much they paid for the non-covered surgery, or who will request Lipedema Surgery in the future, there is no question that receiving insurance coverage for past and future Lipedema Surgeries constitutes significant and substantial value.

As to the second factor, the class would not have received more valuable injunctive or declaratory relief had Cigna been permitted to oppose the fee application. As explained in Plaintiff's moving papers, Plaintiff has obtained all the relief sought in the SAC, and all the relief Plaintiff could have obtained if litigated successfully to conclusion and affirmed on appeal. (Dkt. 105 at pp. 11-13.) Moreover, to prevent even the appearance of any collusion, the Parties did not have any discussions regarding attorney fees and costs until after they had agreed upon all the other material terms regarding the change in Medical Coverage Policy 0531, and the relief to be provided Class Members. (Supp. Davis Dec., ¶ 2.)

Finally, as to the third factor, as the Ninth Circuit held in *Campbell*, reversion is inapplicable here because there is no common fund into which any fees not awarded by the Court can be placed for distribution.

Relatedly, the Court asked Plaintiff to address two questions identified in *Rollins v. Dignity Health*, 2019 WL 8165915, *7 (N.D. Cal. Oct. 28, 2019). The issues were how should the Court consider the fact that (1) the fee award will be paid directly by Defendant and will not alter the amount of the settlement and (2) if the Court awards less than the $542,382.50 sought, the Defendant keeps the difference and "this arrangement … potentially denies the class money that Defendant [] [was] willing to pay in settlement." (Dkt. 111 at 2.)

*Rollins* is inapposite and the concerns raised by that case are not germane to the settlement in this case. *Rollins* involved primarily monetary relief in the form of $100 million contributed to a pension plan and monetary payments to class members. 2019 WL 8165915 at ** 2-3. Thus, in theory, the fees not awarded in *Rollins* could

3

have increased the contributions to the fund. By contrast, here, reimbursement benefits paid to class members will be their out-of-pocket payments for the non-covered surgeries, i.e. their damages. Fees paid or not paid to Class Counsel cannot decrease the amount of their out-of-pocket losses for which the Settlement provides reimbursement. Indeed, there is no cap on what will be paid.  Nor would it increase the amount paid to cover future surgeries, which is simply the allowed amounts under their evidences of coverage.[1]

In sum, the *Bluetooth* factors do not weigh against approval here. The settlement should be finally approved.

## II.     Detailed Hours Summary Further Supports Reasonableness of Fees.

As requested by the Court, below is a detailed chart the shows how each attorney spent time on this case broken down into specific categories, through the date that Plaintiff filed her motion for attorneys' fees on November 3, 2022. The chart is supported by the supplemental declaration of Joshua Davis.

| TASK | Robert S. Gianelli | Joshua S. Davis | Adrian J. Barrios |
|---|---|---|---|
| Pre-suit Investigation | 5 | 0 | 0 |
| Drafting Initial complaint | 6.6 | 0 | 0 |

---

[1] Plaintiff further notes that they are not seeking fees based on a percentage value of the Settlement but ERISA statutory fees pursuant to the fee-shifting statute 29 US.C. section 1132(g)(1). ERISA's fee provisions in particular are intended to encourage beneficiaries to enforce their statutory rights, *Donachie v. Liberty Life Ass. Co. of Boston*, 745 F.3d 41, 45-46 (2nd Cir. 2014), and "to encourage attorneys to take on such cases, which are often time consuming and complex," *Hanley v. Kodak Ret. Income Plan*, 663 F.Supp.2d 216, 219 (W.D.N.Y. 2009). The Ninth Circuit has rejected the rule that ERISA fees be proportional to the underlying benefit provided. *Operating Eng'rs Pension Trusts v. B & E Backhoe, Inc.*, 911 F.2d 1347, 1355 (9th Cir.1990) (rejecting a proportionality rule).  ERISA fees must be determined using the lodestar method. *S.A. McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999) (held ERISA fees calculated using the lodestar method).

| | | | |
|---|---|---|---|
| Drafting amended complaints | 4.5 | 11.9 | 7.3 |
| Motion to dismiss original complaint | 0 | 0.5 | 69.4 |
| Motion to dismiss first amended complaint | 1.2 | 0 | 70.4 |
| Discovery – depositions | 1.6 | 106.25 | 22.4 |
| Discovery – interrogatories and requests for admission | 6 | 70.4 | 8.2 |
| Discovery – Doc Prod and review | 4.4 | 65.3 | 0 |
| Discovery – motions to compel including meet and confer process | 0 | 29.75 | 18.6 |
| Discovery – Other, (e.g. initial disclosures) | 0 | 1 | 2.4 |
| Drafting Motion for Class Cert | 1.7 | 39.9 | 20.6 |
| Motion for Preliminary Approval | 2 | 41.1 | 11.9 |
| Motions for Final Approval | 0 | 0 | 63.5 |
| Other (e.g. CMCs, Scheduling Conferences, etc.) | 13.1 | 20.2 | 15.4 |
| Settlement Negotiations | 8.2 | 32.7 | 0 |
| Motion for Fees | 0 | 13.4 | 49.9 |
| **TOTAL** | **54.3** | **432.4** | **360** |

(Supp. Davis Decl., ¶ 3.)  The lodestar chart set forth in Plaintiff's moving papers is set forth again below for the Court's convenience.

5

| Name | Hours | Rate | Lodestar |
|---|---|---|---|
| Robert S. Gianelli | 54.3 | $900/hr | $48,870.00 |
| Joshua S. Davis | 432.4 | $700 | $302,368.00 |
| Adrian J. Barrio | 360.0 | $675/hr | $243,000.00 |
| **TOTAL:** | | | **$594,550.00** |

The time set forth above does not reflect additional time worked since Plaintiff filed her attorneys' fee motion on November 3, 2022. (Supp. Davis Decl., ¶ 5.) This work involved additional time spent completing the motion for final approval, and working with the settlement administrator. (*Id*.) Not does it include the additional time Class Counsel will spend monitoring the Settlement in this matter. (Dkt. 95-1 at 18.) The time reflected in the firm's lodestar calculation as set forth in the above charts is reasonable in amount and was necessary for the effective and efficient prosecution and resolution of the case. (*Id*., ¶ 6.)

The hourly rates sought here for each timekeeper are previously approved Bay Area market rates. Each of the attorney's hourly rates were established through a contested fee application in 2016, following a successful class action trial that took place in Alameda Superior Court in Oakland, California in the matter entitled *Gallimore v. Kaiser Foundation Health Plan, Inc*., Case No. RG12616206. In *Gallimore*, Gianelli & Morris successfully obtained a judgment against Kaiser requiring it to provide insurance coverage for excess skin surgery for a class of bariatric patients. In granting Plaintiff's fee motion, the court held that class counsel's requested hourly rates were within the range of reasonableness for the San Francisco Bay Area.

> "Having reviewed the competing reports of the parties' respective fee experts and the materials upon which their opinions are based, including the various trial court orders in other cases, the court, in its discretion, concludes that the opinions expressed by Plaintiffs fee expert, that the rates advanced by GM for each of its attorneys are reasonable, are consistent with the authorities cited and the court's own experience, while the opinions of Kaiser's fee expert are not. The rates of $900/hr.

> for Robert S. Gianelli, $700/hr. for Joshua Davis,… $675/hr. for Adrian Barrios, are within the range of rates appropriate to the community of attorneys with comparable skill, expertise and experience in class action litigation in the San Francisco Bay Area and are hereby approved."

(Order Granting Fees in Gallimore, p. 8, (Ex. 1).) A copy of the two expert declarations of Gary Greenfield filed in support of the Gallimore fee application, which explained why the requested rates were within the range of reasonableness for the Bay Area market are attached as Exhibits 2 and 3.

The same hourly rates were again approved in another Bay Area class action involving mental health benefits entitled *Dion v. Kaiser Foundation Health Plan, Inc.*, Case No. RG 14718903, which was also venued in Alameda Superior Court in Oakland, California. (Supp. Davis Decl., ¶ 10.)

The Court also inquired regarding the positions of the various attorneys who billed on this matter. This is not a particularly useful inquiry in context of Gianelli & Morris. As explained in the supplemental declaration of Joshua S. Davis, Gianelli & Morris is small law firm that has employed five to six attorneys during the course of this case. The Gianelli firm is not a structured law firm that accords titles to its attorneys. The work is performed by attorneys based on their experience and skill. Since its founding over 40 years ago, there have been only two shareholders, Mr. Gianelli and Mr. Morris. The other attorneys in the firm are all experienced class action attorneys with more than 10-years' experience who work on and manage cases in the same manner that a mid-level partner would in any large law firm. The high experience level of the attorneys results in higher efficiency (less hours billed) than in large law firms, who must push work down to junior attorneys who are still learning how to perform high level work in complex cases. Due to the experience of the attorneys here, minimal time is wasted on routine issues. Moreover, there is no incentive to waste time given that Gianelli & Morris is not paid by clients monthly

based on hours billed, and receives no fees unless the cases are successful. (Supp. Davis Decl., ¶ 11.)

In any event, Mr. Gianelli is a shareholder and the lead attorney on this case. Mr. Davis (20-plus-year attorney) was primarily responsible for all the day-to-day work on the case, including depositions, law and motion, and discovery disputes and negotiating and completing the ultimate Settlement of this case. Mr. Barrios, another highly experienced attorney (20 plus years) handled law and motion.  (Supp. Davis Decl., ¶ 12.)

While the partner/associate/of-counsel titles may be useful within a particular firm, they are not necessarily viable terms to determine rates in the legal market.

As set forth in the attached declarations of Gary Greenfield, and as found by the Bay Area courts in *Gallimore* and *Dion,* and multiple federal courts in the Central District of California, the requested hourly rate sought here are within the range of reasonableness based on experience and skill of the billing attorneys.

DATED:   March 1, 2023                                          GIANELLI & MORRIS

By:   /s/ Joshua S. Davis
ROBERT S. GIANELLI
JOSHUA S. DAVIS
ADRIAN J. BARRIO
Attorneys for Plaintiff
BANAFSHEH AKHLAGHI

8